The first issue I'd like to address is that the policy's contractual liability exclusion bars coverage for damages the insured assumed under a contract. And here the district court erred in ruling that the insured contract exception to that exclusion permits coverage for obligations that UG had under the Bill of Lading. The policy defines an insured contract as a contract in which the insured assumes the tort liability of another party to pay for bodily injury or property damage to a third person. California case law What form might that take? What would the proof have to be that your client had undertaken the tort liability of another? What would we be looking for? We'd be looking at the underlying contract, here the Bill of Lading, and as an example of an insured contract in the Golden Eagle case that's cited in the papers. The underlying contract stated, The indemnitor shall indemnify, defend, and save harmless the contractor from any and all claims, demands, causes of action, or liabilities of every kind and every nature whatsoever. All right. That assumes, then, direct liability. Here, you were both parties. You and you're concerned here, is it Camdar? Is that who you're concerned with indemnifying? UGCO was Valley Forge's insured. Camdar claimed to be an additional insured. Right. Okay. But here you and Camdar were signatories to a Bill of Lading that made you jointly and severally liable. Right. And the language of the Bill of Lading is important. The Bill of Lading says that they are jointly and severally liable for the performance of obligations under the Bill of Lading. So the Bill of Lading expressly provides for joint and several liability for obligations under that contract. It doesn't say anything about liability outside of the contract. Let's assume for the sake of argument that in the underlying case that the court had ruled against your insureds on negligence, found them negligent. Any different result here? Yes. In that case, the first exception to the contractual liability exclusion would apply. But that was not the case here. In fact, the district court found that they were not liable in negligence. So when we're talking about the insurance contract liability and the liability for someone else's tortious acts, who is that person? The insured. Here, UGCO. Well, or the person, if you've taken it under. Somebody else who's a party to that contract. Right. So the claim here basically is that there's a second party, APL, and their liability for damage is because there's a tortious act of a third party, the shipper, I guess we'll have to say, for U.K. U.K. aerosols, yes. So I'm not sure we've had a case quite like this, but the question is can the insured contract exception be extended that far? No, and I think an illustrative case is the Hertz v. St. Paul case that we cited in our papers. It's certainly not binding. It's a Pennsylvania superior court case. But in that case, there was a rental car contract which provided that the insured had to bring the car back in good condition. And if they didn't bring the car back in good condition, they were liable to Hertz under the rental car contract. And there was an accident. Somebody negligently caused an accident. The car was damaged. And in that case, the insured argued, well, that person who caused the accident was negligent. The contract requires payment of that obligation. And so the insured argued that's an insured contract because somebody was negligent and liability arose. And the Court said, no, that's not the case. This isn't a hold harmless agreement. This is a liability under a contract. The contract was bring the car back in good condition. And the person who rented the car did not do that. Here the contract says the parties will deliver the goods and U.G. and Camdar and U.K. aerosols are jointly and severally liable for any breach of any obligation under that contract. But what's different about this case is that you have the jointly and severally liability clause, which suggests that if any one of you is liable, everyone they can look to, APL can look to anyone to pay it. Now, that's not exactly like the liability insurance policy that you described for me where one will assume the liability of another, but at least puts you on notice and maybe your insurer on notice that if somebody else that you are affiliated with messes up here, that APL can look to you to satisfy the claim. Isn't that right? But the contract only says for obligations imposed under the contract. Nowhere does it say that it extends that coverage to some liability that might exist outside of the contract. And as an example of why that's important here, APL admitted in its motion in this case that it was never established that U.K. aerosols caused the damage. They acknowledged in their motion, which is in our Valley Forges supplemental excerpts of record, for all we know, they may have delegated the packing to someone else. So here we have a situation where it wasn't established in the underlying case that U.K. aerosols caused the damage. It wasn't established in the underlying case that U.K. aerosols had tort liability. And the district court acknowledged that in the summary judgment order at issue, which is in the excerpts of record at page 25, note 4. And the reason that's significant here, the point is, it never had to be established that U.K. aerosols did the packing itself or that U.K. aerosols had tort liability, because the contract provided under the contract that U.K. aerosols, Camdar and Ujico, were jointly and severally liable for the contract obligations. So if this were, for this to have been an insured contract, what would have had to have happened in the underlying case is that U.K. aerosols would have been found, had to have been found negligent and would have had to have been found liable in tort, which admittedly never happened. It's conceded that never happened. But it didn't need to here, because this is a contractual liability under the Bill of Lading, not an assumption of liability for any obligations imposed outside of the contract. And that's the key point here, that this is not an agreement to assume somebody else's tort liability. It's an agreement to assume joint and several obligations imposed under the contract, and the Bill of Lading expressly says that. Now, there's a second issue I'd like to address, which is apart from the ruling on the application of the contractual liability exclusion generally, the district court erred in ruling that Valley Forge's policy covers the attorney's fees awarded in the underlying case, the case that was just addressed, as damages for property damage. The district court ruled that the attorney's fees awarded to APL were damages, but that court disregarded the language of the policy, which requires more than just damages. The policy requires damages for property damage. And the attorney's fees here under California insurance law and under the policy language are not damages for property damage. The California Supreme Court said in the Hogan case that losses are damages for property damage under a liability policy only if they represent the measure of damages to physical property within the policy's coverage. Would that part of the policy cover, let's say, interest? No. So it wouldn't cover any interest on a judgment. That's right. That's the time value of money and not the damages. Right. There's a separate provision in the contract, the supplementary payments provision, that provides that the insured can claim costs and interest, but only the insured. And the California cases that are cited in the papers, the Clark case and the San Diego housing case, hold that a third-party judgment creditor such as APL is not entitled to costs and is not entitled to interest. The supplementary payments provision in the policy only provides for payment of that to the insured. Now, here, the district court ordered that the attorney's fees were paid as damages, but, again, not damages for property damage. And we've cited in our papers the Cutler-Arose case, the California court of appeal case, which held that an attorney's fees award is not an award of damages for property damage because it does not compensate the plaintiff for the injury that first brought him into court, but instead it reimburses him for a portion of the expenses he incurred in seeking relief. And that's what we have here. The attorney's fees were not incurred for property damage. They were the measure of what it costs to seek the relief, but were not a measure of the harm for the property damage. Now, APL cites a case called Golden Eagle, 99 Cal Up 4th 387, and Golden Eagle held that there's an exception to this rule that attorney's fees can't be damages for property damage, and that exception applies where an indemnity contract provides for the defense of another party, which we don't have here. Say, for example, if you go to the court of appeals and say, well, I'm not going What strikes me is that the insured contract defense, or excuse me, exception, really is a measure of creating an additional insured. It provides for identification of tort liability for a third party. Right. And many insurance contract exceptions in CGL policies often contain language to say we'll pay for your attorney's fees, too. Only to the person that the party agrees to defend. Exactly. In other words, you were supposed to step in and defend them. You pay their attorney's fees. Right. So Golden Eagle says there's that exception. If here, for example. So let me stop you there. I mean, are you saying, I guess what your argument is, as a matter of California law, they import that language into the interpretation of an insurance contract exception, which is sometimes made explicit in the CGL policy. That's right. Okay. And so, for example, here, if UGCO had agreed to defend U.K. Aerosols and hold them harmless, if U.K. Aerosols had incurred attorney's fees defending itself, those attorney's fees could be owed under the insured contract coverage. But APL is not entitled to that. And the Golden Eagle case confirms that the policy language it issued here provides for that result. Golden Eagle did not address the same policy language here, but it said it addressed a prior version of the form. Yeah. But it talked about the policy language issue here. It said, let's look to the current form. Well, the current form discussed in Golden Eagle is the policy language that is in Valley Forge's policy. And that policy language is in the record, at excerpts of record 205. And I have copies here, if the Court would like to see it. But the insured contract exception that APL is relying on provides that APL's defense costs. The ---- Was that issue raised in a district court? No. We weren't able to brief this in the district court, Your Honor. In APL's motion, APL did not argue that the attorney's fees it sought were damages. APL argued that the attorney's fees were costs under Singapore law and were recoverable under the supplementary payments provision. Okay. So then they were granted by the district court. Then what did you do? Then we objected to that in a supplemental paper. In one of the summary judgment motions we wanted to file, we raised that we disagreed with the ruling that those were damages, but that we wouldn't re-argue that. So the district court had granted a ruling that these costs are owed as damages that APL never made in its motion. APL first made that motion in its reply papers. So you're not in a position, I assume from your argument, that this is being raised for the first time on appeal? That's right. We raised in our briefing, in our motion, that and in our opposition. Your motion to what? Our motion for summary judgment and our opposition to APL's motion for summary judgment, we raised the argument that attorney's fees are not damages and can't be recovered as damages. Now, I take that back. We argued the supplementary payments provision because they hadn't raised the damages issue. So the damages issue was raised subsequently on the motions that the district court declined to entertain? Right. Okay. It's in a footnote that we said we disagree with that motion, but we wouldn't re-argue that ruling. Now, I'd like to ask the Court, though, to look at this policy language in Excerpts of Record 205. It's in the insured contract exception, paragraph B-2, paragraph B-1B-2. And in the same paragraph that provides the insured contract exception, the policy says that solely for the purposes of liability assumed in an insured contract, reasonable attorney's fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of bodily injury or property damage. Okay. That was the provision I was referring to earlier. And then it says provided, and there are two conditions, provided liability to such a party's defense has been assumed, and also such attorney's fees are incurred for the defense of a party that's been identified. So the fees APL cut don't seek, don't fit under this wording. So the very clause at issue, the insured contract exception, does not permit the result that these attorney's fees are owed as damages under the policy. That's about a minute. Do you want to reserve? I would like to reserve it, but I'd also like to note that our third issue is an important issue. The district court refused to hear two issues that we brought, three issues that we brought in a second motion, and that that refusal was improper, as the Stillman case we cited demonstrates. And I'd like to reserve the rest of my time. Thank you. Good afternoon again, Your Honors. To address the issue of the insured contract, we have to look at the actual language of the exception. The language of the exception says, quote, that part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay for property damage to a third person or organization. Well, here's my question. I've never seen a case, and maybe you can enlighten me, but I didn't see a case that you cited where that exception applied under these circumstances where the contract didn't inure to the benefit of the tort feeser, but rather the person who was wrong. I mean, generally speaking, where I've seen the insured contract exception apply is when you're assuming somebody else's tort liability to a third party. But here, the situation is reversed. It's the third party's tort liability to you, the second party. So I've never seen a case like it, and you don't cite one. Well, we don't cite one specific to these circumstances, but what we do cite to is the language of the actual exception, which is what has to be interpreted. An indemnity agreement can take many different forms. The fact that all of the cases have been or most of the cases have been decided in the context of a case. I've never seen one that's in a second party case. I would agree with you, Your Honor, except for the fact that Valley Forge has cited what they believe is the Hertz case, and I don't think that that's actually an insured contract. I mean, they do mention it, but the Court comes out and says it's not an insured contract for a good reason. Let me express my underlying concern, and you can address the broader policy, which is this. The insured contract exception is supposed to apply so that you can assume some tort liability for someone else you contract with. It's not a blanket, we're going to pay for all your indemnification. And it strikes me that the bill of lading is saying this is a straight indemnity contract, and we're just going to provide indemnity. It's contractual indemnity. That's what the underlying judgment holds. But we're not assuming your tort liability to third parties. So to me, in terms of assessing underwriting costs and so forth, this is a pretty far stretch. You know, I'm open-minded, but I'm just giving you my concerns so you can address it. Certainly. I'm happy to address them. Clause 9. Valley Forge focuses on the definition of merchant. The definition of merchant has two pieces to it. First of all, it tells you who is a merchant and who is bound as a merchant under the bill of lading. Merchants include U.G., U.K. Aerosols, as well as Camdar. They're all parties to the bill of lading. So is APL. So with that, then you look to see what is a merchant responsible for. Well, under the definition, it's joint and severally liable. So there's some contractual liability established under the definition of merchant. But Clause 9 is different. Clause 9 says that you merchants are going to indemnify APL, who's admittedly also a party to the agreement, for the tort liability, the negligence of the person who packs the containers. And in this case, the person who packed the containers. It doesn't say tort liability. It says somebody else packs the containers. It's almost strict liability. Right. It doesn't say tort liability. It doesn't say negligence. It doesn't say the usual language. It just says we're going to, you know, the carrier is not responsible and we'll indemnify the carrier for loss. The result of the language of Clause 9 is that the only means, and this is what this has to do with it on the first appeal, is that the only means for Clause 9 to actually be valid is if the shipper is negligent. If the shipper is not negligent, then there is no liability under Clause 9. In which case, UG is not liable under Clause 9. Camdar is not liable under Clause 9. There has to be negligence. There has to be tort liability in order for Clause 9 to apply. Why does it matter who causes the damage? I mean, if it's improperly packed or let's say it's an active, you know, if you didn't pack it, it doesn't matter what happened. It doesn't matter if anybody is negligent. They're still responsible. Because under Clause 9, what UG has done is they said we will indemnify UAPL for the negligence of U.K. Aerosols, who is also a part of the agreement. It doesn't say negligence. The word negligence is not in there. That's true. It's not. But it says. So stop saying it. Okay. We will indemnify you for improper packing, stowing of the container. Improper packing and stowing of the container, this Court previously determined in order for that provision to be enforceable, it required some form of tort liability on behalf of the shipper. Assuming that's true, why does it matter in terms of the insurance contract exclusion? Because what they're indemnifying you for is your loss. They aren't indemnifying you for loss you caused somebody else. And that's the essence of the insurance contract exception. They are ñ well, U.K. Aerosols is also a party to. If they were indemnifying U.K. Aerosols, you know, that might be a different question. But the benefit goes to you, and you are not the tort feeser. But that brings us back to the actual language of the contractual provision itself, which is any part of ñ that part of any other contract, that part is Clause 9. Clause 9 can stand independent of the rest of the bill of lading because that's what the insurance contract says. It says that part of any other agreement. It's an agreement that's in writing. It's that part of any other agreement. And so ñ That pertains to your business. Right. So you start off, and as a contract, that's excluded, right? That's right. Okay. Unless it's an insurance contract. An insured contract, yes. So that's where we ñ that's where the rubber meets the road on this thing. And an insurance contract means you're contracting to provide some liability protection to a person by virtue of getting sued from somebody else. I mean, that's the general interpretation on every case you've had. I'm not disagreeing with you. I'm just saying in a second-party case, it seems to me you're wiping out all meaning of the insurance contract exclusion ñ or, I'm sorry, the exclusion ñ the contract exclusion because any loss is covered. Well, it's not any loss that's covered because we're not proceeding under Clause 19, which was also established to be contractual liability. We're not proceeding under the definition of merchant beyond the fact that a merchant establishes that UG is a merchant under the bill of lading. It sets up, based on the language of the actual insured contract definition, which is the insurance company's language, it sets up that Clause 9, while it may not be the application of every case out there, fits squarely within the definition of how they've defined an insured contract. You add to that the fact that exclusions are strictly construed and exceptions to exclusions are broadly construed. And you find that this language, broadly construed, covers the situation. In most of the cases you're referring to, you have a ñ you have a subcontractor, a general contractor, and the owner. I mean, that's a usual paradigm. It's a contract ñ you know, construction cases where you're saying, look, we're going to assume the liability for any subcontractors. If they injure somebody else, we're assuming a liability, and that's an insurance contract. That's not the case here. They didn't assume your liability to anybody else. They paid you for your loss. They assumed the liability of U.K. Aerosols, who was also a party to the agreement. And the liability of U.K. Aerosols was for improper packing. Now, Valley Forge tries to make the point that that was not determined in the underlying matter, but it was determined in the underlying matter. The Court came out and said that ñ found that U.K. Aerosols packed the containers, that they were improperly packed, and that the improper packaging caused damage and resulted in the loss. This Court and the district court found that in order for Clause 9 to be enforceable, that sort of liability, that sort of tort liability had to exist, because without it, it would run afoul of COGSA and be unenforceable. So because without the ñ without the tort liability established under Clause 9, Clause 9 couldn't be enforceable. So it was found there as well. Finally, it was also stipulated to in this action, Valley Forge stipulated to in the joint statement of facts, that the Court found that U.K. Aerosols was ñ had packed the container, that U.K. Aerosols had improperly packed the container, and it was the U.K. Aerosols. Now, they point to ñ they try to claim that APL admits in the underlying action that U.K. Aerosols didn't pack the container. That's not exactly true. Well, does it really matter if they delegated it? They delegated it. That's right, Your Honor. That was our position, that it was ñ them or their agent, and therefore they're responsible. And that was the ñ their agreement, to assume that liability. I want to make sure you get to your attorney's fees and the other portions. I was ñ I've eaten up your time with my questions. I'm happy to address the attorney's fees, Your Honor, but the crux of the attorney's fees issue goes back to the question of damages. The district court correctly pointed out that the term damages is not defined in the insurance policy. Now, Valley Forge argues that it's damages for property damage. It's not damages for property damages. It is damages because of property damage, which is very different, because the Hoffman case was a four case. This is a because of case, different standards. What we have here is damages. The district court, by the fact that they haven't defined damages in the policy, the district court found that attorney's fees qualify as damages. They are compensation, the court found, under ñ in this case, they are compensation compensation. Why did the court find that? Two reasons. This isn't ñ Okay. Before you get to that, why doesn't the specific provision contained in the insurance contract exception apply to with respect to attorney's fees? I grant you that damages is not defined, but the insurance contract exception does contain language that talks about recovery of attorney's fees. Why doesn't that apply? And I believe that that language relates to recovery of defense fees, not prosecution fees. Here, the prosecution fees are found to be compensation. We heard it in the earlier argument, Your Honor. Under Singapore law, they are compensation. They are part of damages. They need to be proved as damages. As a result, they fit squarely within the definition that's put forth by Valley Forge, which is that they have to be compensation in order to fit within the liability provision under which coverage is being provided. I think that I grant your argument. The problem I see, though, is if ñ I mean, it seems to me that additional language in the insurance contract exclusion fortifies the idea that this is supposed to be a defense provision, not for prosecution. In other words, it's defense of a tort, not incurring a tort. So the arguments may fall on themselves. Fees are full. Except to the extent, Your Honor, that you have to read this insurance policy from the perspective of how either Valley Forge would believe or a reasonable person would believe the insured would view that provision. If you're an insured who's been held responsible for attorney's fees as damages, in other words, as compensation, your expectation, similar to what the court found in the AIU case, is that you'd be covered for it. I mean, California's Supreme Court came out and said, attorney's fees do, damages can be broad enough to include remuneration. And that is what, according to Valley Forge, these attorney's fees are, that they're remuneration, and therefore they can be covered within damages. They also, Valley Forge also attempts to cite cases that for the proposition that under California law, attorney's fees are never damages. That's just, that's, those cases do not stand for that individual proposition. The, specifically, the, I believe it's the Horsey-Cutler case, only says under those circumstances that they don't find the fees to be damages. But they don't come out and say, a blanket rule in California, fees are never quote-unquote damages. In fact, in the Golden Eagle case, the court found that damages was broad enough to include attorney's fees. Now, those granted were defense fees, but the, the import of that decision is that damages can include attorney's fees, and particularly they can include attorney's fees when they are compensation for, as part of the, as a part of the plaintiff's compensation. And here, Singapore law establishes that attorney's fees are compensation. Admiralty law stands for the same proposition. In Admiralty law, although the fees here were awarded under Singapore law, if, if they weren't awarded under Singapore law and had been awarded under the law that applied to the case, Admiralty law, they also would have been considered compensation. The same is true of interest. Interest under Admiralty law, in the Standard Oil case, it lays out. Interest in Admiralty is considered part of compensation, part of the plaintiff's damages. And therefore, we submit that interest, although the arguments addressed to interest are set forth under the supplementary payment provision section, our position is that, one, that Valley Forge waived that by not raising it, but assuming that the court exercises discretion to address the interest issue, that is covered just as the attorney's fees are as damages under the primary coverage provision for property damage. I know you only have a few seconds left. Would you address and take the time you need to address the exclusion or Judge Patel's ruling that she would not entertain other bases for summary judgment? I mean, I guess I understand an irritation, but as I look at the record, I don't see an order that says all motions have to be filed by X date. When the parties came to the court. You stipulated. You stipulated to it. No question, but anyway, go ahead. I'm sorry. We stipulated to what? You stipulated to a discovery deadline for motions, but then that was never, as I understand the record, that she never signed off on that. That's right, Your Honor. We put forth in the Joint Case Management Conference a schedule as required by the local rules of the Northern District. That schedule was then the parties then came to the court as part of their Rule 16b conference, and they discussed the case. And what did we discuss? We discussed that the parties were going to make dispositive motions on the issue of coverage. When you review the record, you will see that nowhere in there does Valley Forge ever say that they intend to bring a single motion just on a single affirmative defense. They say we're going to move on coverage. That's what APL said we were going to do. Everyone agreed that what we were going to determine was the issue of coverage as an 11-5, as an action under Insurance Code 11-580. The only, as set forth in Valley Forge's own motion, the only issue at issue in these summary judgment motions was the issue of coverage. They didn't say the only issue was the issue of the single affirmative defense. They do point to the Stillman case, but the Stillman case is actually the exact opposite of this case. In the Stillman case, they came forward and said we're filing a partial summary judgment motion on a single affirmative defense. The parties laid that out in their joint statement to the court prior to the case management conference. They also made a submission to the court prior to trial before she ruled on that summary judgment motion in the Stillman case where they reconfirmed that there would be other affirmative defenses. That's not this case. Yeah. The problem is I don't see an order that the plan is violated here. It's just an understanding. Well, there was you had a conference. You had an understanding. You were going to file cross motions for summary judgment. Their take on the record is, well, we didn't. We were only talking about this portion of the case. We didn't say we wouldn't file something. We usually take these issues seriatim. Your position is, look, everything was on the table and everybody had an understanding and then they violated the understanding. But it's quite a sanction to then strike parties' defenses based on a misunderstanding as opposed to a violation of order. Well, Your Honor, she did not strike their defenses. What she did was she precluded them from reopening her summary judgment order. And while the distinction is subtle, it is a distinction. The fact is she issued an order following that case management conference. It set forth a briefing schedule because everyone agreed we were going to address the issue of coverage. Once APL filed this motion for summary judgment, that put the burden and we established those elements under 11-580. That put the burden on Valley Forge to come forward with all of their defenses, not simply to sit back and rest on their pleadings. But since we moved for summary judgment, they were obligated to come forward with all of their affirmative defenses to refute or to establish an issue of fact. They didn't do that. The only defense that they came forward with was the exclusion defense. Although they had alleged the other ones, although they knew them at the time, there was nothing that APL did or the court did that precluded them from raising those defenses. At that point, once she makes a ruling, she's established summary judgment for APL. Valley Forge would then procedurally have to go back and move for reconsideration. Under the rules for reconsideration, they would have had to have established either new evidence, new law, or clear error on behalf of the district court. They didn't do that. They didn't ask to reopen the summary judgment order. What they did was they waited four months and they went to the judge and requested a case management conference and raised for the first time at that point, well, there are these other defenses. And the judge at that point said, nobody ever precluded you from raising those defenses before. It was your decision, which is exactly what APL's position is that when we came forward with the summary judgment motion, the obligation was then placed upon Valley Forge to come forward with all of their defenses to defeat our position on coverage. They didn't do that. We defeated the position on coverage that they did come forward with, and therefore her entry of judgment should stand. Any further questions? Thank you. Rebuttal. As Your Honor noted, there is no case holding that a contract like this is an insured contract. It simply doesn't provide for any obligations other than obligations under the contract. And this would be a significant change in the law of what an insured contract is to rule in APL's favor. I believe the rest of the points on that issue I've already made. On the attorney's fees issue, APL argues that essentially the court should disregard the language in the insured contract exception, exception two, providing the limited exception what can be, what attorney's fees can be awarded as damages for property damage. Under APL's argument, that language would be written out of the policy because APL is saying that under the insuring agreement, damages for property damage, any attorney's fees should be recoverable as damages for property damage. If that were the case, there would be no reason for this exception here. This limited exception provides that only in the circumstances where a party that's agreed to defend another party does so and pays their attorney's fees, those can be recovered. If all attorney's fees could be damages for property damage, that exception wouldn't need to be in the policy, and therefore APL's position would write that language out of the policy, which violates California rules of contract interpretation. On the issue of the other motions, the court said it exactly right, that the judge basically entered terminating sanctions on three coverage issues because of a misunderstanding. At the case management conference, we said that the ---- Perhaps. How do you respond to the argument that once they raise the motion for summary judgment, you are obligated to raise all defenses against their motion? In other words, you are obligated maybe to file your own motion, but you are obligated to defend against their motion. The Stillman case, Your Honor, the Eleventh Circuit said that that's not the result, that where a party moves for summary judgment but doesn't show that it can negate the other party's affirmative defenses, the issue goes forward that was raised in the motion, but the other affirmative defenses remain. Stillman was just like this case. There was an insurance coverage case. There was one exclusion that was issued, addressed in cross motions, and the court ruled for the insured and then entered judgment for the insured. And the Eleventh Circuit reversed, saying, no, the summary judgment motion on that one exclusion didn't preclude the other coverage defenses from being raised in the case, and the Eleventh Circuit sent the case back to the trial court for consideration of other coverage defenses. And that's what this Court should do. When we had the May 2010 case management conference, I advised that there may be discovery needed about the issuance of the policy, but also said there was an issue that could be decided on a summary judgment motion without any discovery. And our understanding was we were going forward on cross motions on that issue, and even though we had proposed a case management order that set a discovery cutoff and a motion cutoff, the judge never entered the cutoff. So our understanding was this motion going forward would address the threshold issue of the application of this exclusion, but that other coverage issues would remain in the case. And we specifically advised APL of that in a June 2010 early neutral evaluation statement where we addressed the contractual liability exclusion, but said we were still reserving the right to raise other defenses. Roberts. Okay. I understand your position. Any further questions? All right. Thank you, Your Honor. Thank you both for your arguments today. It's an interesting case. It presents a lot of issues. And we will submit it for decision. Then we'll proceed to the argument, Van Asdale v. International Game Technology. Pardon? I can't breathe. No, I can't. Jay, you need a break. New lawyers. Thank you.
judges: Wallace, Thomas, Bybee